**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| MIRIAM BUTLER and EVELYN STEWART, in her capacity as Personal Representative of the Estate of Joseph Stewart, individually and on behalf of others similarly situated, | Civil Action No. 3:19-cv-02621-JMC JURY DEMANDED |
|         Plaintiffs, | |
| v. | |
| THE TRAVELERS HOME AND MARINE INSURANCE COMPANY and THE STANDARD FIRE INSURANCE COMPANY, | |
|         Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, AND IN THE ALTERNATIVE, SUGGESTION CONCERNING QUESTION CERTIFICATION UNDER SOUTH CAROLINA APPELLATE COURT RULE 244**

DAVID E. MASSEY (SC Bar 3679)
SUMMER C. TOMPKINS (SC Bar 76078)
LAW OFFICES OF DAVID E. MASSEY
  TRIAL LAWYERS
1620 Gervais Street, Suite A
Columbia, SC 29202
(803) 256-4824
radmassey@aol.com
summertompkins2010@gmail.com

ERIK D. PETERSON*
MEHR, FAIRBANKS & PETERSON
  TRIAL LAWYERS, PLLC
201 West Short Street, Suite 800
Lexington, KY 40507
(859) 225-3731
edp@austinmehr.com

T. JOSEPH SNODGRASS*
LARSON KING, LLP
30 E. 7th Street, Suite 2800
St. Paul, MN 55101
(651) 312-6510
jsnodgrass@larsonking.com

J. BRANDON McWHERTER*
GILBERT McWHERTER SCOTT
  BOBBITT PLC
341 Cool Springs Blvd., Suite 230
Franklin, TN 37067
(615) 354-1144
bmcwherter@gilbertfirm.com

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

FACTUAL ALLEGATIONS ........................................................................................3

    A.  Plaintiffs' Claims For Labor Withheld From ACV Payments......................3

    B.  The Traditional Insurance Industry Practice.................................................3

    C.  The Advent Of Claims Software And The Option To Withhold Labor .......5

    D.  The Advent Of Labor Depreciation Permissive Policy Forms ....................7

    E.  Travelers Does Not Use A "Straight Line" Depreciation Methodology,
        But Rather Only Withholds Labor When The Practice Cannot Be Detected ...............9

ARGUMENT ............................................................................................................10

    A.  Understanding Replacement Cost Coverage, Actual Cash Value and Depreciation...10

    B.  This Court Must Give S.C. Elec. A Fair Reading, Giving Effect To All Of Its
        Implications.................................................................................................14

    C.  S. E. Elec. Is Dispositive Of Defendants' Motion To Dismiss...................14

    D.  Defendants' Remaining Arguments Do Not Warrant Dismissal ................18

        1.  Applicable Out-Of-State Authority Favors Plaintiffs' Position............18

            a.  Travelers' cases from states that interpret ACV to mean market value
               or apply the broad evidence rule are unhelpful.................................18

        2.  Under South Carolina Law, Policy Ambiguity And Split Authority Warrant
            Denial Of Travelers' Motion ..........................................................22

        3.  South Carolina "Post-Disaster Claims Guide" Does Not Support Dismissal.......23

        4.  This Dispute Only Involves A Question Of Law Not Fact, And Is Not
            Subject To Appraisal.........................................................................24

        5.  Depreciation In Tax And Real Estate Contexts Do Not Support Travelers'
            Motion.............................................................................................26

        6.  The Duplicative Declaratory Relief Count Should Not Be Dismissed.................27

E.  Question Certification Under South Carolina Appellate Court Rule 244....................28

1.  No Controlling Precedent .........................................................................28

2.  Determinative Of The Cause .................................................................29

CONCLUSION...............................................................................................................29

# TABLE OF AUTHORITIES

## Cases

*Adams v. Cameron Mut. Ins. Co.*, 430 S.W.3d 675 (Ark. 2013) ...................................................20

*American Cent. Ins. Co. v. District Court*, 147 N.W. 242 (Minn. 1914) ......................................25

*Arnold v. State Farm Fire and Cas. Co.*, 268 F. Supp. 3d 1297 (S.D. Ala. 2017) ............... *passim*

*Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997 (4th Cir. 1998)...........................................14

*Bellefonte Ins. Co. v. Griffen*, 358 So.2d 387 (Miss. 1978)...........................................................20

*Brasher v. Allstate Indemn. Co.*, No. 4:18-576, 2018 WL 5629918 (N.D. Ala. Sept. 7, 2018) ....21

*Brown v. Travelers Casualty Insurance Co. of America*, No. 15-50,
    2016  WL 1644342 (E.D. Ky. Apr. 25, 2016) ...................................................................21, 22

*Casetech Specialties, Inc. v. Selective Ins. Co.*, No. 13-11792, 2013 WL 6835098
    (E.D. Mich. Dec. 23, 2013)...........................................................................................................1

*Dickler v. CIGNA Prop. and Cas. Co.*, 957 F.2d 1088 (3d Cir.  1992)...................................12, 26

*Eder v. Allstate Ins. Co.*, 60 F.3d 833, 1995 WL 398822 (9th Cir. 1990).....................................1

*Fedas v. Ins. Co. of State of Pa.*, 151 A. 285 (Pa. 1930) ...............................................................11

*Glendale v. National Union Fire Ins. Co.*, No. 12-380, 2013 WL 1296418
    (D. Ariz. Mar. 29, 2013) ...............................................................................................................1

*Golden Eagle Ins. Co. v. Ins. Co. of the West*, 121 Cal. Rptr. 2d 682 (Cal. Ct. App. 2002) ...........1

*Greenville Cty v. Ins. Res. Fund*, 443 S.E.2d 552 (S.C. 1994).....................................................22

*Hartsock v. Goodyear Dunlop Tires North America, Ltd.*,
    672 Fed. Appx. 223 (4th Cir. 2016)............................................................................................28

*Harwell v. Home Mutual Fire Ins. Co.*, 91 S.E.2d 273 (S.C. 1956)..............................................25

*Helena Chem. Co. v. Allianz Underwriters Ins. Co.*, 594 S.E..2d 455 (S.C. 2004)......................23

*Hicks v. State Farm Fire & Cas. Co.*, 751 Fed. App'x. 703 (6th Cir. 2018)........................ *passim*

*Ingram v. Liberty Insurance Corp.,* Case No. 16CVH06-5538
    (Ohio Cir. Ct., March 13, 2018)..................................................................................................21

*Jenkins v. State Farm Fire & Casualty Co.*, No. 15-CH-8242 (Cook Cir. Ct. Feb. 4, 2016)........21

*LaBrier v. State Farm Fire and Cas. Co.*, 147 F. Supp. 3d 839 ...................................................27
    *rev'd on other grounds*, 872 F.3d 567 (8th Cir. 2017) ..........................................................28

*Lains v. American Family Mutual Ins. Co.*, Case No. 14-1982, 2016 WL 4533075
    (W.D. Wash. Feb. 9, 2016) ........................................................................................................21

*Lammert v. Auto-Owners (Mutual) Ins. Co.*, 286 F.Supp.3d 919 (M.D. Tenn. 2017) ..............2, 29

*Lammert v. Auto-Owners (Mutual) Ins. Co.*, 572 S.W.3d 170 (Tenn. 2019) ...................... *passim*

*Lawrence v. General Panel Corp.*, Case No. 2:17-600, 2017 WL 5484661
    (D.S.C. Nov. 14, 2017) ..............................................................................................................28

*McFadden v. Fuller,* No. 13-2290, 2014 WL 3671336 (D.S.C. July 22, 2014)...........................19

*McGill v. Moore*, 672 S.E.2d 571 (S.C. 2009)..............................................................................25

*Miller v. Vocational Rehabilitation Worship, Inc.,* No. 09-39, 2009 WL 482349
    (D.S.C. Feb. 25, 2009) ..............................................................................................................19

*Mitchell v. State Farm Fire and Casualty Company*, 335 F. Supp. 3d 847 (N.D. Miss. 2018);
    *appeal pending* ..........................................................................................................................21

*Nat'l Fire Ins. Co. of Hartford v. Solomon*, 638 P.2d 1259 (Wash. 1982)....................................21

*Payne v. Tennessee,* 501 U.S. 808 (1991).....................................................................................17

*Phillips v. Pitt County Memorial Hosp.,* 572 F.3d 176 (4th Cir. 2009)..........................................19

*Shelter Mutual ins. Co. v. Goodner*, 477 S.W.3d 512 (Ark. 2015) .................................................2

*Sierra Pac. Power Co. v. Hartford Steam Boiler Inspection and Ins. Co.*,
    490 Fed.Appx. 871 (9th Cir. 2009)............................................................................................21

*South Carolina Electric & Gas Co.  v. Aetna*, 120 S.E.2d 111 (S.C. 1961)......................... *passim*

*Sproull v. State Farm Fire and Cas. Co.*, No. 16-L-1341
    (Madison Cty. Cir. Ct. Feb. 26, 2018); *appeal pending* ..........................................................21

*Stahle v. CTS Corp.*, 817 F.3d 96, 100 (4th Cir. 2016)..................................................................14

*Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371 (8th Cir. 2018) ............................................21

*Titan Exteriors, Inc. v. Certain Underwriters at Lloyds*, 297 F. Supp.3d 628 (N.D. Miss. 2018) ...................................................................................................21, 23

*Travco Ins. Co. v. Ward*, 468 Fed.Appx. 195, 2012 WL 666230 (4th Cir. Mar. 1, 2012) ..............1

*West Anderson Water Dist. v. City of Anderson*, 790 S.E.2d 204 (S.C. Ct. App. 2016) ...............25

*Wickersham v. Ford Motor Co.*, 738 Fed. Appx. 127 (4th Cir. 2018)............................................28

*Wilcox v. State Farm Fire & Cas. Co.*, 874 N.W.2d 780 (Minn. 2016).........................................25

## Statutes and Rules

10 C.C.R. § 2695.9(f)(1) (2019) .....................................................................................................21

Fed. R. Civ. P. 23(b)(3)....................................................................................................................27

Fed. R. Civ. P. 23(c)(4)....................................................................................................................27

S.C. App. R. 244 ..........................................................................................................................2, 28

## Other Authorities

12A Couch on Ins. § 177.30 (3d ed. June 2019) ............................................................................4

5-47 New Appleman on Ins. Law Library Ed. §47.04[2][a] (2016).............................................12

Allan D. Windt, Ins. Claims and Disputes § 11:35 (6th ed., March 2018 update) ...................11

Chip Merlin, *Few Judges and Insurance Regulators Worked In Property Claims: Understanding New Insurance Rulings*, Prop. Ins. Cov. Law Blog (August 16, 2017) .........4

Don Wood *et al.*, *Insurance Recovery After Hurricane Sandy: Correcting the Improper Depreciation of Intangibles Under Property Insurance Policies*, 42 Torts, Ins. & Compensation L.J. 19, 24 (Winter 2013) ................................................................................4

FC & S Bulletin, *Should depreciation be applied to demolition, cleaning, and odor control costs following a fire loss*? (Nat'l Underwriting Co. December 5, 2015)............................2

*Market Conduct Examination of Allstate Insurance Company, et al.*, California Department of Insurance (1998) ..............................................................................................5

*Market Conduct Examination of Sandy and Beaver Valley Farmers Mutual Ins. Co. as of June 30, 2011*, Ohio Dep't of Insurance (May 21, 2012) ...........................................4, 5

Robert Eurich, Insurance and Loss Prevention §7.4.1 (2011) ................................................26

Vol. 238 S.C. 210-301, SUPREME COURT OF SOUTH CAROLINA, CASE HEARD AND
    SUBMITTED, BRIEFS AND RECORDS (1961) ............................................................16

## INTRODUCTION

Plaintiffs Miriam Butler and Evelyn Stewart respectfully submit this opposition to Defendants The Travelers Home and Marine Insurance Company and The Standard Fire Insurance Company's (collectively "Travelers") Motion to Dismiss. Dkt. 16. The seminal South Carolina decision, *South Carolina Electric & Gas Co. v. Aetna*, 120 S.E.2d 111 (S.C. 1961) (hereinafter "*S.C. Elec.*"), is dispositive of Defendants' Motion. Under *S.C. Elec.*, the Motion should be denied.

This lawsuit involves a unique category of property insurer: an insurer that engages in the practice of withholding labor costs as depreciation—without a policy form authorizing the same. Travelers' 41-page memorandum skillfully avoids the key question of *why* Travelers, unlike many of its competitors, has steadfastly refused to use a coverage form expressly addressing the practice of labor depreciation.

In this case, Plaintiffs encourage the Court to follow the position of National Underwriters and hold that labor may not be withheld as depreciation in the absence of a policy form allowing the practice. Five years before this suit commenced, the insurance industry's leading authority[1] on coverage issues, Fire, Casualty and Surety (FC & S), formally issued a bulletin taking the position that property insurers should *not* withhold labor as depreciation from actual cash value ("ACV")

---

[1] FC & S Bulletins are published by National Underwriters, a 110-year old insurance industry service provider, and "are particularly persuasive as interpretive aids where they support coverage on behalf of the insured." *Golden Eagle Ins. Co. v. Ins. Co. of the West*, 121 Cal. Rptr. 2d 682, 688 (Cal. Ct. App. 2002); *see also Eder v. Allstate Ins. Co.*, 60 F.3d 833, 1995 WL 398822, at *5 (9th Cir. 1990) (holding it is difficult to interpret insurance policy contrary to FC & S Bulletin as it reflects interpretation by insurance industry experts); *Travco Ins. Co. v. Ward*, 468 Fed.Appx. 195, 2012 WL 666230, at *200 n.6 (4th Cir. Mar. 1, 2012) (FC & S Bulletins are "an insurance industry publication which provides expert analysis on insurance policy interpretation"); *Casetech Specialties, Inc. v. Selective Ins. Co.*, No. 13-11792, 2013 WL 6835098, at *7 n.4 (E.D. Mich. Dec. 23, 2013) (relying on FC & S Bulletin); *Glendale v. National Union Fire Ins. Co.*, No. 12-380, 2013 WL 1296418, at *11-12 (D. Ariz. Mar. 29, 2013) (same).

payments unless the insurer's policy expressly allowed for the practice. *See* FC & S Bulletin, *Should depreciation be applied to demolition, cleaning, and odor control costs following a fire loss*? (NAT'L UNDERWRITING CO. December 5, 2015) ("It has been our position that depreciation should not apply to labor unless a policy explicitly states that it should."). Ex. A. Property insurance policy forms addressing the practice of withholding labor have existed for many years. Dkt. 13-4 (2008 survey[2] discussing policy forms); *see also Shelter Mutual ins. Co. v. Goodner*, 477 S.W.3d 512 (Ark. 2015) (addressing 2012 labor depreciation insurance policy form).

Travelers' refusal to use a policy form addressing labor depreciation—while simultaneously withholding labor depreciation—is particularly problematic in this jurisdiction because, in *S.C. Elec.*, the South Carolina Supreme Court held that while replacement materials are depreciable, repair labor is "undepreciable" when calculating actual cash value under a property policy that did not define actual cash value. 120 S.E.2d at 119. There, the supreme court upheld the propriety of a jury verdict concerning actual cash value by independently analyzing and using a formula that applied a 50% depreciation rate to materials only—not labor. *Id*. The supreme court's decision in *S.C. Elec*. is consistent with Plaintiffs' position here, as well as other decisions from "replacement cost less depreciation" jurisdictions. For this reason, the Motion should be denied in its entirety.

Finally, if this Court rejects Plaintiffs' arguments concerning *S.C. Elec*., which it should not, the Court should be aware of and consider certification of the disputed legal question to the South Carolina Supreme Court pursuant to South Carolina Appellate Court Rule 244. *See Lammert v. Auto-Owners (Mutual) Ins. Co.*, 286 F.Supp.3d 919, 926-27 (M.D. Tenn. 2017) (noting federal

---

[2] The survey was undertaken by the National Association of Insurance Commissioners ("NAIC").

courts in Arkansas, Minnesota, Nebraska, Oklahoma and Tennessee have certified labor depreciation questions to state supreme courts).

## FACTUAL ALLEGATIONS

**A.    Plaintiffs' Claims For Labor Withheld From ACV Payments**

Two policyholders from Columbia, South Carolina brought this putative class action against the two affiliated Travelers property insurers for underpayment of property claims. Dkt. 13, First Amended Complaint ("FAC") at ¶¶1-2, 5. This lawsuit only concerns property insurance coverage for structural damage (*e.g.*, homes, buildings and other structures) and *not* for personal property (*e.g.*, clothes and furniture). FAC at ¶13. Further, this lawsuit only concerns ACV payments, and not replacement cost value ("RCV") payments or benefits. FAC at ¶ 87.

Travelers determined its ACV payment obligations to each of the Plaintiffs by use of the "replacement cost less depreciation" methodology. FAC at ¶¶28, 40. Plaintiffs agree with Defendants that this methodology was the appropriate methodology to use. FAC at ¶¶ 30, 42. Plaintiffs also agree with Defendants' valuations of the amount of labor and materials necessary for the repair of their property to its pre-loss condition. FAC at ¶¶36, 48. Plaintiffs do not dispute any of Defendants' valuations as to the depreciated values of the tangible property at the time of the loss. FAC at ¶¶36, 48. Instead of disputing valuations, the dispute here is simply whether Travelers' policy forms allow Defendants to withhold portions of the agreed-to amounts of labor as "depreciation." FAC at ¶¶37, 49.

**B.    The Traditional Insurance Industry Practice**

Within the insurance industry itself, there is a substantial conflict concerning whether intangible labor is depreciable. *Arnold v. State Farm Fire & Cas. Co.*, 268 F. Supp. 3d 1297, 1311 n.23 (S.D. Ala. 2017) ("defendant has injected evidence that 'some adjusters believe only the

material and not the labor should be depreciated ... defendant has confirmed that some percentage

of insurance adjusters, like some percentage of jurists, share the plaintiff's understanding"); *see*

*also* 12A COUCH ON INS. § 177.30 (3d ed. June 2019) ("According to one view, labor may not be

depreciated in calculating the actual cash value of a covered loss under an indemnity insurance

policy.").

Prior to the advent of the computerized property insurance claims-estimating software

programs described below approximately ten years ago, most property insurance adjusters

adjusting structural damage claims were taught only to depreciate materials, and not to withhold

labor as "depreciation," when calculating ACV. *See, e.g.*, Don Wood *et al.*, *Insurance Recovery*

*After Hurricane Sandy: Correcting the Improper Depreciation of Intangibles Under Property*

*Insurance Policies*, 42 TORTS, INS. & COMPENSATION L.J. 19, 24 (Winter 2013) ("I was taught

many years ago that depreciation, when it was applied, must be done on a line-by-line, item-by-

item basis…. I obtained charts of the average lifespans of materials. A few sample pages from the

National Association of Home Builders is attached. Material lifespans shown in the attachment

were derived from reports of product manufacturers. Nowhere in any of the lists of materials is

any labor item mentioned …"); Chip Merlin, *Few Judges and Insurance Regulators Worked In*

*Property Claims: Understanding New Insurance Rulings*, PROP. INS. COV. LAW BLOG (August 16,

2017) ("when I was starting out, an older and experienced GAB [General Adjustment Bureau]

adjuster told me they never depreciated labor"). FAC ¶51 (at Exs. B, C).

For this reason, most insurance regulators have referred to the "materials only" approach

as the traditional "insurance industry" practice. *See Market Conduct Examination of Sandy and*

*Beaver Valley Farmers Mutual Ins. Co. as of June 30, 2011*, Ohio Dep't of Insurance, at 6 (May

21, 2012)[3] (insurer should not depreciate labor on ACV claims "in order to be consistent with the industry practice of not depreciating labor"); *Market Conduct Examination of Allstate Insurance Company, et al.*, California Department of Insurance, at 16 (1998)[4] (acts of depreciating labor charges "are inconsistent with industry practice and are violations of" statutory fair claims practices laws).

## C.    The Advent Of Claims Software And The Option To Withhold Labor

In contrast to the traditional property insurance industry approach, and especially within the past ten to fifteen years, commercially-available claims-estimating software programs began to provide a property insurer with the option to withhold a portion of the labor needed to repair a structure as "depreciation" at the same time the program calculated the depreciation arising from the physical deterioration of building materials. This new option was created as property insurers, and their computer programmers, realized that withholding labor as "depreciation" could dramatically lower ACV payments. FAC at ¶53.

The computer programs that provide an insurance company with the option to withhold labor as depreciation include not only the software program used by Travelers in South Carolina—Xactimate—but also most of the prevalent claims-estimating software programs used today. FAC at ¶53. For example, the below screenshot from the Xactimate program shows that an insurer can choose to select or de-select "Depreciate Non-Material" and "Depreciate Removal," both of which are labor items.

---

[3] *Available at:*
http://www.insurance.ohio.gov/Company/MC/Sandy%20and%20Beaver%20Valley%20Exam%20-Report.pdf (last visited November 13, 2019).

[4] *Available at:*  http://mail.consumerwatchdog.org/insurance/rp/rp000619.pdf (last visited November 13, 2019).



FAC at ¶53. Today, all commercial claims-estimating software allow an insurer to withhold, or not withhold, labor as depreciation through a click of a button and without changing any claim adjusting determinations. FAC at ¶53 and Dkt. 13-3.

The claim-estimating computer software program's option to withhold or not withhold labor as depreciation allows for a tremendous difference between the amount a property insurer will pay for the ACV of identical claims. FAC at ¶55. Assume, for example, a hypothetical, simple property claim wherein a Columbia, South Carolina policyholder's laminate wood floor, totaling 1500 square feet, was destroyed in June, 2019. The property adjuster determines that the laminate floor had depreciated by one-third of its useful life at the time of loss. FAC at ¶55. If the insurance company adjusts the claim under the traditional, "materials-only" approach using Xactimate software (and using Xactimate's June 2019 price list for Columbia, South Carolina), the flooring would be depreciated by $1,559.25, and the company would issue an ACV payment for $7,861.50, as reflected by the Xactimate screen shot below:

**Dwelling - Raw Sewage Example**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 1a.  Remove Laminate - simulated wood flooring | 1,500.00 SF | 0.83 | 0.00 | 1,245.00 | <0.00> | 1,245.00 |
| 1b.  Replace Laminate - simulated wood flooring | 1,500.00 SF | 5.23 | 330.75 | 8,175.75 | <1,559.25> | 6,616.50 |
| **Totals:  Dwelling - Raw Sewage Example** | | | **330.75** | **9,420.75** | **1,559.25** | **7,861.50** |

FAC at ¶56.

However, if the same insurance company, using the identical measurements and condition conclusions, toggles on the "depreciate removal" and "depreciate non-material" option settings within Xactimate's software (which now withholds portions of the labor necessary to both remove and then reinstall replacement flooring), the flooring is now depreciated by $2,999.70, resulting in an ACV payment for only $6,421.05, as reflected by the Xactimate screen shot below:

**Dwelling - Raw Sewage Example**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 1. R&R Laminate - simulated wood flooring | 1,500.00 SF | 6.06 | 330.75 | 9,420.75 | <2,999.70> | 6,421.05 |
| **Totals: Dwelling - Raw Sewage Example** | | | **330.75** | **9,420.75** | **2,999.70** | **6,421.05** |

FAC at ¶57.

## D.    The Advent Of Labor Depreciation Permissive Policy Forms

In September 2008, the National Association of Insurance Commissioners ("NAIC") conducted research into the "labor depreciation" practice by surveying state regulators throughout the United States. The NAIC published a copyrighted study of these results, a copy of which is attached hereto as Exhibit C. FAC at ¶58. Twenty-six states, including South Carolina, did not respond to the survey. Of the jurisdictions that did respond, there were no consistent positions and many regulators believed the practice was not taking place in their respective states. FAC at ¶59.

Industry regulators from Tennessee, Texas and Washington noted that certain property insurers expressly addressed the issue of labor depreciation within their insurance policy forms. FAC at ¶60. As a result, property insurers have two primary options for how to proceed concerning labor depreciation. On the one hand, property insurers can use insurance policy coverage forms that expressly allow for the new practice of withholding labor as depreciation. Property insurers who chose this option have the obvious benefit of substantially lowering ACV claim payments,

but these insurers simultaneously risk losing market share based upon the undesirability of restricted coverage forms. FAC at ¶61.

Several property insurers operating in South Carolina have chosen this option. For example, South Carolina's largest homeowners insurer by market share, State Farm Fire and Casualty Company, includes a definition that provides: "Actual cash value means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation. For this calculation, all components of this estimated cost including … materials … labor and … overhead and profit are subject to depreciation." Dkt. 1-5. The Farmers Insurance Group similarly issues a homeowners policy in South Carolina that states "Our adjustment for physical deterioration, depreciation, and obsolescence applies to all costs, including the costs of labor and materials." Dkt. 1-4. These types of forms, expressly allowing the withholding of labor as depreciation, will be referred to in this brief as "labor depreciation permissive forms."

On the other hand, property insurers can also reject the new practice of withholding labor as depreciation from ACV payments. These carriers simply continue to pay ACV claims at the traditional rate. For example, the Nationwide Insurance Group does not withhold labor as depreciation from ACV payments. FAC at ¶63.

Unfortunately, certain property insurers, in an effort to obtain an advantage over their competitors and policyholders, rejected both of these approaches. These insurers choose not to risk their market share by creating and notifying policyholders, through restricted ACV coverage forms, that they would pay less for ACV payments. At the same time, these insurers withhold labor as depreciation from ACV payments—without a change of policy forms and without informing policyholders. Travelers takes this approach. FAC at ¶64.

Travelers' conduct is unfair to both its own policyholders and competing property insurers. Travelers' competitors: (1) continue to pay higher claims rates under policies similar to those used by Travelers; or (2) risk losing market share by creating and disclosing restricted policy forms notifying policyholders that they would begin to pay less for ACV claims. Travelers avoids both of these adverse consequences. FAC at ¶65.

**E.    Travelers Does Not Use A "Straight Line" Depreciation Methodology, But Rather Only Withholds Labor When The Practice Cannot Be Detected.**

Contrary to the misstatements of fact within Travelers' memorandum of law, Travelers did *not* withhold labor by applying a "straight line" depreciation methodology. A straight line depreciation methodology applies a percentage uniformly to all categories of labor and materials at issue. Dkt. 16-1 at 17 and 38.

In truth, and as alleged in the First Amended Complaint, Travelers did not use any principled methodology to depreciate categories of labor for Plaintiff's claim (as stated in the motion to dismiss). FAC at ¶58. Instead, Travelers only depreciated certain categories of labor when it would be impossible to detect the practice in the Xactimate estimate provided to policyholders. FAC at ¶58.

Before focusing on how Travelers applied and hid its practice of withholding labor as depreciation, it is important to appreciate the background allegations concerning the lack of available information to Travelers' policyholders:

- Travelers does not disclose in its policies that it will withhold labor as depreciation (FAC at ¶71);

- Travelers' marketing materials and online presence do not address withholding labor as depreciation. In Travelers' website page entitled "Understanding Depreciation," Travelers affirmatively leads a policyholder into believing only tangible materials like "laptops" and "structural components of your dwelling or building" are subject to depreciation (FAC at ¶¶72-73); and

9

●     Unlike other property insurers, Travelers does not disclose in form communications or on Xactimate print-outs provided to policyholders that Travelers withholds labor as depreciation (FAC at ¶75).

Travelers' methodology for withholding labor is both unusual and unprincipled. Xactimate uses "line item" pricing to determine repair costs. Most line items combine both labor and materials in the line item, such that it is impossible to tell if labor is being depreciated with materials. For example, a line item for painting can include both the labor (painting) and materials (primer and paint). Some line items, however, are clearly just for labor, such as labor minimums. FAC at ¶¶76-77.

The withholding of labor as depreciation becomes obvious to a sophisticated policyholder if Travelers depreciates "pure labor line items." This would obviously reflect the withholding of labor. For example, line items 592 through 595 of Travelers' estimate of Butler's loss reflects labor minimums for carpenters (stairway), plumbers (shower doors and toilets), and tile workers (tile / marble). No depreciation is applied to any of this labor, leading one to believe labor is not being withheld as depreciation. *See* Dkt. 13-1**.** Similarly, other pure labor line items such as removal work (*e.g*, Line Item 120) and preparatory cleaning (*e.g*., Line Items 1, 3, 12, 13) are not depreciated. *Id*. at 3-4, 12. Again, this leads a policyholder to believe that Travelers was not depreciating labor.  Travelers only withholds labor from line items in estimates when the line item includes materials. In contrast, Travelers does not depreciate any labor in pure labor line items. FAC at ¶¶77-79.

## **ARGUMENT**

### A.    **Understanding Replacement Cost Coverage, Actual Cash Value and Depreciation**

In simplest terms, under an RCV policy, a policyholder is intended to be placed in a *better* position than he or she was in before a loss. The policyholder's building is replaced with all new

building materials regardless of cost. "Replacement cost coverage … in contravention of the general rule that an insured cannot profit through insurance, results in the insured being better off than he or she was prior to the loss, since the insured ends up with a more valuable property." Allan D. Windt, INS. CLAIMS AND DISPUTES § 11:35 (6th ed., March 2018 update); *see Arnold*, 268 F. Supp. 3d at 1297, n.17 ("the very point of an RCV policy is to place the insured in a better position than she previously occupied").

On the other hand, ACV coverage, as instructed by the South Carolina Supreme Court, is intended to return the policyholder's building to the same condition that it was in right before the loss. Quoting extensively from *Fedas v. Ins. Co. of State of Pa*., 151 A. 285, 288 (Pa. 1930), the South Carolina Supreme Court held that under ACV coverage the policyholder must receive enough money to return the building to its pre-loss condition with materials of like kind and quality. This means the value of new materials can be depreciated, but labor to return the materials "in place" cannot be depreciated:

> An ACV payment "is summed up in the idea 'the cost of replacing in as nearly as possible the condition as it existed at the date of the fire. The actual cost of new material, with a deduction for depreciation, which is not sufficient to replace the building as nearly as it could be as of the date of the fire, does not comply with the [ACV] policy…
>
> If the new material is to be depreciated to reach the actual cash value contemplated by the policy, the timber or part destroyed must be considered in connection with the whole structure and valued accordingly, *and should reflect the use in place*. The result is that called for in the policy, replacement as nearly as possible, or its cost. If part of the building destroyed cannot be replaced with material of like kind and quality, then it should be substantially duplicated within the meaning of the policy.

*S.C. Elec.*, 120 S.E.2d at 262 (emphasis added).

Finally, in the property insurance context, depreciation is "the amount an item has lessened in value since it was purchased, taking into account age, wear and tear, market conditions, and

obsolescence. Although depreciation has been defined in several ways, *the principal definition attributable to that term refers to 'physical depreciation.'*" 5-47 NEW APPLEMAN ON INS. LAW Library Ed. §47.04[2][a] (2016) (emphasis added). While "economic depreciation" may be one possible definition of depreciation, physical deterioration is the preferred definition in the insurance property context. *Dickler v. CIGNA Prop. and Cas. Co*., 957 F.2d 1088, 1099 (3d Cir. 1992).

An example can illustrate the differences between replacement cost value and actual cash value, the interplay between the two, and the role of depreciation and its impact on labor. Assume a residential home has a 25-year old siding (with a normal life span of 50 or more years).  Further assume that all of the siding was properly installed at the time the policyholder buys actual cash value coverage. Then, a large portion of the properly-installed siding is destroyed in a hail storm. Determining the replacement cost value is simple, *i.e*., the cost to remove and then replace all damaged siding with brand new materials.  For purposes of our hypothetical, we will assume that replacement cost to be an undisputed $30,000. To arrive at an actual cash value, the next step is to determine the proper depreciation.  When determining the appropriate deduction for depreciation, it is critical to keep the goal of indemnity at the heart of the calculation, *i.e*., to restore the insured to her pre-loss condition. To do this, the goal of course must be to give the insured what she had before the loss, which was 25-year old, properly installed siding. Actual cash value therefore requires payment of the value of 25-year old siding already properly installed, *i.e*., siding "in place." The siding was not sitting in a garage.

So how is this accomplished? First, the damaged 25-year old siding has to be removed and disposed of, and that labor cost must be ascertained. Then, the diminution in value of 25-year old siding materials at the time of the loss must be determined. Finally, the labor cost of cutting and

re-installing siding back to the same way it was installed before the loss must be calculated. This calculation puts the insured right back where she was before the loss (a residential home with installed siding minus wear and tear value to the siding).

The policyholder in this hypothetical is not receiving replacement cost coverage because he or she must fully pay, out of his or her own pocket, the delta between 25-year old and brand new materials. The concept of physical depreciation fairly penalized the policyholder for all of the roof's pre-loss wear and tear.

Of course, in the real world, there is oftentimes no store that a person can visit to purchase "used" 25-year old siding. As a result, the concept of depreciation was born to hypothetically determine the cost of used materials. In the above hypothetical, if we simplistically assumed the cost of the $30,000 roof was half labor ($15,000) and half materials ($15,000), then the proper ACV payment would be 100% of the labor costs ($15,000) and 50% of the value of siding ($7,500), resulting in a total ACV payment of $22,500. In contrast, if labor was also depreciated by 50%, the ACV payment would decrease to $15,000.

Finally, to further drive the point, if the labor for removing the damaged siding and re-installing replacement siding is also withheld in part, this leaves the policyholder in a worse position because even if she can afford to pay the difference between the worn 25-year old siding and brand-new siding out-of-pocket, the ACV payment does not enable her to remove the damaged siding and then reinstall the siding she just paid for. This double deduction is unfair. It does not accomplish indemnity, and is the ultimate reason why Defendant's logic and arguments fail. Defendant's theory leaves the insured in a worse condition than before the loss. Such a result is the opposite of indemnity.

13

**B.    This Court Must Give *S.C. Elec.* A Fair Reading, Giving Effect To All Of Its Implications.**

The parties are in agreement that the seminal South Carolina authority is *S.C. Elec.*, 120 S.E.2d 111, but Travelers substantially understates the supreme court's analysis concerning the depreciation of labor.  Dkt. 16-1 at 28. Because the South Carolina Supreme Court addressed the issue of labor depreciation in *S.C. Elec.*, plainly stating that labor was not depreciable under an ACV policy, this Court must deny the instant motion.

In determining how much weight to give to the supreme court's analysis under the *Erie* doctrine, the Fourth Circuit has held that a district court is bound to follow not only the express holding of *S.C. Elec.*, but must also give effect to all of its implications. "It is axiomatic that in determining state law a federal court must look first and foremost to the law of the state's highest court, *giving appropriate effect to all its implications*." *Stahle v. CTS Corp.*, 817 F.3d 96, 100 (4th Cir. 2016). "A state's highest court need not have previously decided a case with identical facts for state law to be clear. It is enough that a fair reading of a decision by a state's highest court directs one to a particular conclusion." *Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir. 1998).

**C.    *S. E. Elec.* Is Dispositive Of Defendants' Motion To Dismiss.**

In *S.C. Elec.*, an electrical utility suffered loss to 20-year old copper coils within an electrical generator, whose primary components were: (1) a stator (a seven foot tall iron drum); (2) the damaged 384 copper coils lining the stator; and (3) a rotor, a rod that generated electricity upon rotation within the stator. 120 S.E.2d at 256. The insurance policy at issue provided for payment of "the actual cash value at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss." *Id.* at 258.

14

A verdict was rendered for $87,000. *Id*. at 255. The property insurer appealed, arguing that the trial court's instructions may have allowed the jury to bring in an excessive verdict for the actual cash value of the stator, which was not destroyed, as opposed to the coils, which were damaged.

The supreme court carefully went through the evidence to show that the jury awarded an amount consistent with the evidence, and in doing so, the court addressed the appropriate formula for calculating ACV. Twice, and through two examples with differing depreciation percentages, the supreme court affirmatively stated that the costs of labor (winding and installation) were "undepreciable" while the replacement cost of the materials, the copper coils, were depreciable:

> There was testimony to the effect that the actual cost of the new coils, in place, was $132,181, of which $90,300, representing *the cost of materials, would be depreciable*, *and the balance, $41,881,* representing cost of winding and installation, *would not be depreciable*.
>
> The cost of the new materials, depreciated to sixty (60%) per cent to conform with the depreciated life of the old as above mentioned, would be $54,180. Addition to this figure *of the undepreciable $41,881 of replacement cost*, would indicate that the actual cost of the new coils, *in place*, after depreciation, was $96,061, a figure substantially higher than the jury's verdict…
>
> Based on a forty per cent depreciation, the actual cost of the new coils in place, as before mentioned, was $96,061. *Calculating depreciation at fifty per cent (as suggested by the testimony of Mr. Kindelberger, the field service engineer of Westinghouse), the actual cost of the new coils in place was $87,031*. The verdict, $87,000, is in our opinion not vulnerable to the charge of excessiveness requiring a new trial absolute.

*Id*. at 263 (emphasis added).

The supreme court twice used the same formula for ACV wherein only the value of materials were reduced by the depreciation percentage but 100% of the repair labor (for winding and installation of the copper coils) was allowed for. More specifically, the precise formula used by the supreme court to approve the verdict was:

Cost of replacement materials_____$90,300

Depreciation to conform to depreciated life of old materials_____50%

Value of old materials on date of loss_____($90,300 x 50%)_____$45,150

Value of winding and installation of replacement materials_____$41,881

Actual cash value under supreme court's formula____($45,150+$41,881)____$87,031

Approved verdict for policyholder_____$87,000

*Id.*

In its brief, Travelers suggests that the supreme court's statements (*i.e.,* that labor is not depreciable) were "merely a recitation of testimony in the case and not a holding or even *dictum* of the court." Dkt. 16-1 at 23. In other words, Travelers suggests that the following italicized language from the supreme court merely summarized witness testimony: "There was testimony to the effect that the actual cost of the new coils, in place, was $132,181, of which $90,300, representing the cost of materials, *would be depreciable*, and the balance, $41,881, representing cost of winding and installation, *would not be depreciable*." *Id*. Travelers assumes without proof that while the values of labor and materials recited in this sentence came from trial witnesses, so too did the supreme court's statements about labor not being subject to depreciation.

But, the appellate record in *S.C. Elec.* proves Travelers is wrong. *See* Vol. 238 S.C. 210-301, SUPREME COURT OF SOUTH CAROLINA, CASE HEARD AND SUBMITTED, BRIEFS AND RECORDS (1961) (attached at Ex. D).[5] The *S.C. Elec.* appellate court record, which includes the full trial

---

[5] Because Plaintiffs are proving a negative (that the supreme court was not merely reciting witness testimony when it repeatedly stated labor is not depreciable), the *S.C. Elec.* appellate record is produced in its entirety as an Exhibit filed concurrently with this brief. Ex. D Bates 1-202. The SUPREME COURT OF SOUTH CAROLINA, CASE HEARD AND SUBMITTED, BRIEFS AND RECORDS appellate volumes are available at the University of South Carolina Law Library.

16

transcript, shows the values the supreme court discussed are accurately reflected in the testimony of witnesses. *See* Ex. D Bates 64 (witness Sturman stating the value of materials was $90,300) and Bates 79 (witness Fritz stating the total cost of repairs was $131,181).

Contrary to Travelers' argument, nothing from any trial witness concerns the issue of withholding labor as depreciation from an ACV payment. Ex. D.  Bates 7-116. The *S.C. Elec*. appellate record proves that the supreme court's conclusion that labor is not depreciable came from the supreme court itself – *not* from a trial witness.  The supreme court's twice repeated statement was a legal conclusion of the court.

Travelers also makes a confusing attempt at distinguishing *S.C. Elec*., making an incomprehensible point about a piece of equipment "may not add value to or even become part of the building as a whole … in contrast to putting on a new roof." Dkt. 16-1 at 23. However, the appellate record  in *S.C. Elec*. reflects that the case was factually indistinguishable from the present case in that: (1) *S.C. Elec*. involved a casualty (fire) loss; (2) under the actual cash value coverage terms of a property insurance policy; (3) that required the purchase new replacement materials (copper coils); (4) which had to be depreciated by 50% of their useful life; and (5) the necessary reinstallation and repair labor to return the coils to their pre-loss placement was not subject to depreciation. This same fact pattern is present here.

While handed down almost 60 years ago, the unanimous supreme court decision in *S.C. Elec*. has received no negative treatment from any court, but has been favorably cited. This long-standing precedent should be followed by federal courts applying South Carolina law. *Payne v. Tennessee*, 501 U.S. 808, 828 (1991) ("Considerations in favor of *stare decisis* are at their acme in cases involving property and contract rights, where reliance interests are involved."). Because

the supreme court relied upon the same ACV formula advocated by Plaintiffs here, Travelers'

Motion to Dismiss must be denied.

**D.      Defendants' Remaining Arguments Do Not Warrant Dismissal.**

**1.      *Applicable Out-Of-State Authority Favors Plaintiffs' Position.***

**a.      Travelers' cases from states that interpret ACV to mean market value or apply the broad evidence rule are unhelpful.**

Obviously aware that *S.C. Elec.* is contrary to its position, Travelers spends a substantial

portion of its argument trying to focus the Court's attention on foreign case law. Dkt. 16-1 at 17-

24. Seeking to avoid application of the out-of-state authority from states that—like South

Carolina—calculate ACV as RCV less depreciation, Travelers misleadingly suggests that South

Carolina applies a "market value" test to determine ACV. Dkt. 16-1 at 33. But, as explained *supra*

in Section C, the supreme court applied the RCV less depreciation methodology—not market value

or the broad evidence rule—to determine the ACV of the loss in *S.C. Elec.*

As stated above, *S.C. Elec.* proves that the supreme court used a replacement cost less

depreciation methodology to affirm the verdict. As a matter of fact, Travelers used the same

"replacement cost less depreciation" methodology to value Plaintiffs' losses. Additionally, in

Bulletin Number 2014-08, dated July 26, 2014, the South Carolina Department of Insurance

informed insurers that they must provide "Important Information" to policyholders explaining their

insurance policies. FAC ¶ 27; Ex. E. The Bulletin's sample notice, which, "if used in a substantially

similar manner, will be deemed to meet the requirements of the law." Ex. E at 5. That sample

notice states: "*Actual cash value* is the amount needed to repair or replace the damage minus a

deduction for depreciation." *Id.* at 16 (emphasis in original). On September 14, 2014, Travelers

filed with the South Carolina Department of Insurance its form notices to all homeowners

policyholders for all Travelers affiliates using the Department of Insurance's sample language.[6] Ex. F. In short, it cannot be seriously disputed that the only methodology at issue is the replacement cost less depreciation methodology.

As the most recent federal appellate decision concerning labor depreciation reflects, the foreign authority split can be largely harmonized by looking at whether the dispute in question is governed by the "replacement cost less depreciation" methodology or the "broad evidence rule." In *Hicks v. State Farm Fire & Cas. Co.*, 751 Fed. App'x. 703 (6th Cir. 2018), the Sixth Circuit provided a simple analysis harmonizing the existing case law from throughout the United States. The Court found:

- Kentucky is a "replacement cost less depreciation" state;

- The insurer's supporting case law was not from "replacement cost less depreciation" states; and

- Authority from "replacement cost less depreciation" states favors policyholders.

Specifically, the court stated the very same authority relied upon by Travelers here is distinguishable because it comes from broad evidence states, not "replacement cost less depreciation" states:

---

[6] The foregoing filing was obtained from the South Carolina Department of Insurance public filing system SERFF. https://filingaccess.serff.com/sfa/home/sc  In reviewing a Rule 12(b)(6) motion, the Court "may properly take judicial notice of matters of public record[,]" including agency records made available on government websites. *Phillips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004) (noting it was proper during Rule 12(b)(6) review to consider "publicly available [statistics] on the official redistricting website of the Virginia Division of Legislative Services.")); *McFadden v. Fuller*, No. 13-2290, 2014 WL 3671336, at *6 n.3 (D.S.C. July 22, 2014) (collecting cases "indicating that federal courts may take judicial notice of governmental websites" and "that postings on government websites are inherently authentic or self-authenticating"); *Miller v. Vocational Rehabilitation Workshop, Inc.*, No. 09-39, 2009 WL 482349, at *3, n.3 (D.S.C. Feb. 25, 2009) ("The court may take judicial notice of factual information located in postings on government websites." (citing cases)).

> [T]he cases on which [the insurer] relies—*Redcorn*, *Henn*, *Wilcox*, *LaBrier*, and *Graves*—*come primarily from states where the broad evidence rule applies* or where the policies at issue expressly define ACV. On the other hand, courts that have endorsed the minority position come from states with laws or regulations like Kentucky, *which prescribe a replacement cost less depreciation formula*.

751 Fed. Appx. at 710-11 (emphasis added).

Even if *S.C. Elec*. did not compel a ruling in favor of Plaintiffs (which it does), the Sixth Circuit's analysis in *Hicks* is an independent basis for ruling against Travelers. The "replacement cost less depreciation" methodology is focused entirely on allowing enough money for repairs to return a building to its pre-loss condition. If the insurer withholds labor from the ACV payment by expanding the concept of depreciation to include market value concepts, the policyholder cannot return the property to its pre-loss condition.

To the best of Plaintiffs' counsel's knowledge, and in addition to the state supreme court's analysis in *S.C. Elec*. referenced above, there are three other state supreme courts from "replacement cost less depreciation" jurisdictions that have addressed labor depreciation in some fashion—*i.e.,* Arkansas, Mississippi and Tennessee. In all three cases, the state supreme courts found labor is *not* depreciable. *See Adams v. Cameron Mut. Ins. Co*., 430 S.W.3d 675, 678 (Ark. 2013) ("We … simply cannot say that labor falls within that which can be depreciable."); *Bellefonte Ins. Co. v. Griffen*, 358 So.2d 387, 389-90 (Miss. 1978) (policy term allowing "deduction for depreciation" is ambiguous because it "does not specifically prohibit or allow depreciation on the cost of labor"); *Lammert v. Auto-Owners (Mutual) Ins. Co*., 572 S.W.3d 170 (Tenn. 2019) ("We conclude that the answer to the district court's certified question is no, the insurance company cannot withhold a portion of the labor costs as depreciation under either policy.").

20

In addition to *Hicks*, *S.C. Elec.*, *Adams*, *Bellefonte* and *Lammert*, there is substantial case law from federal and state courts from "replacement cost less depreciation" jurisdictions precluding labor depreciation under policies that do not address the issue. *E.g., Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371 (8th Cir. 2018) (Arkansas); *Mitchell v. State Farm Fire and Casualty Company*, 335 F. Supp. 3d 847 (N.D. Miss. 2018) (Mississippi law), *appeal pending*; *Titan Exteriors, Inc. v. Certain Underwriters at Lloyds*, 297 F. Supp.3d 628 (N.D. Miss. 2018) (Mississippi law); *Brasher v. Allstate Indemn. Co*., No. 4:18-576, 2018 WL 5629918 (N.D. Ala. Sept. 7, 2018) (Alabama); *Arnold v. State Farm Fire and Cas. Co*., 268 F. Supp. 3d 1297 (S.D. Ala. 2017) (Alabama); *Brown v. Travelers Casualty Insurance Co. of America*, No. 15-50, 2016 WL 1644342 (E.D. Ky. Apr. 25, 2016) (Kentucky); *Sproull v. State Farm Fire and Cas. Co*., No. 16-L-1341 (Madison Cty. Cir. Ct. Feb. 26, 2018) (Illinois)  (Ex. G), *appeal pending*; *Jenkins v. State Farm Fire & Casualty Co.*, No. 15-CH-8242 (Cook Cir. Ct. Feb. 4, 2016) (Illinois) (Ex. H); *Ingram v. Liberty Insurance Corp.*, Case No. 16CVH06-5538, slip op. at 5, (Ohio Cir. Ct., March 13, 2018) (Ohio) (Ex. I). As the Sixth Circuit explained in *Hicks*, here, where South Carolina Courts, its Department of Insurance, Travelers and the policyholder all agree to the "replacement cost less depreciation" method, "'the instructive precedents are not those from states that reject reproduction cost, but those that define actual cash value as replacement cost less depreciation…." 751 Fed. Appx. at 711.[7]

---

[7] As noted in *Hicks*, there may be isolated exceptions to the *Hick*s dichotomy between "replacement cost less depreciation" states and other jurisdictions. For example, both California and Washington do *not* define ACV as replacement cost less depreciation.  *Sierra Pac. Power Co. v. Hartford Steam Boiler Inspection and Ins. Co.*, 490 Fed.Appx. 871, 874 (9th Cir. 2009); *Nat'l Fire Ins. Co. of Hartford v. Solomon*, 638 P.2d 1259, 770 (Wash. 1982). However, neither California regulation nor Washington case law permit withholding labor as depreciation from ACV payments. *See* 10 C.C.R. § 2695.9(f)(1) (2019) ("the expense of labor necessary to repair, rebuild or replace covered property is not a component of physical depreciation and shall not be

Finally, the South Carolina Supreme Court has never adopted the broad evidence rule. Instead, the *S.C. Elec.* decision focuses on providing enough money to allow for the return of a building to its pre-loss condition under the "replacement cost less depreciation" methodology.

Whether the South Carolina Supreme Court would ever adopt the broad evidence rule in the future is not a consideration here because the parties affirmatively agreed on the application of the "replacement cost less depreciation" methodology.  FAC ¶¶ 30, 42.  As the Tennessee Supreme Court has recently held:

> Auto-Owners argues that Tennessee is a broad evidence state and that this court should follow other broad evidence states in concluding that labor is depreciable. First, we note that this Court has never adopted the broad evidence rule. In *Braddock*, this Court merely acknowledged that the broad evidence rule and the replacement-cost-less-depreciation method both accomplished indemnity. *Braddock*, 493 S.W.2d at 460. Moreover, whether Tennessee is a broad evidence state is not at issue because in this case, *as the homeowners point out, the parties agreed that the actual cash value was to be calculated based on the replacement cost method*.

*Lammert*, 572 S.W.3d at 178 (emphasis added); *see also Brown*, 2016 WL 1644342 at *5 ("Here, the parties have agreed that actual cash value is replacement cost less depreciation."). In short, where the supreme court has not adopted the broad evidence rule (as here), or where the parties agree to application of the "replacement cost less depreciation" methodology (again, as here), labor cannot be withheld as depreciation under foreign case law.

> ### 2. *Under South Carolina Law, Policy Ambiguity And Split Authority Warrant Denial Of Travelers' Motion.*

The South Carolina Supreme Court has repeatedly held that split authority concerning policy interpretation "militates" a finding of ambiguity. "Where the words of an insurance policy

---

subject to depreciation"); *Lains v. American Family Mutual Ins. Co.*, Case No. 14-1982, 2016 WL 4533075 at *3 (W.D. Wash. Feb. 9, 2016) ("Defendant improperly depreciated labor when determining the actual cash value of Plaintiff's home.").

are capable of two reasonable interpretations, that construction will be adopted which is most favorable to the insured. That different courts have construed the language of an insurance policy differently is some indication of ambiguity." *Greenville Cty. v. Ins. Res. Fund*, 443 S.E.2d 552, 553 (S.C. 1994). "Therefore, the split of authority amongst the other courts that have addressed this issue *militates in favor of a finding of ambiguity and an interpretation in favor of the insured*." *Helena Chem. Co. v. Allianz Underwriters Ins. Co.*, 594 S.E..2d 455, 460 (S.C. 2004) (emphasis added).

As Travelers must concede, numerous state and federal courts have noted that the existing conflict between jurists concerning labor depreciation is more than sufficient to find ambiguity. *E.g.*, *Arnold*, 268 F. Supp. 3d at 1311 ("Again, however, the question is whether the plaintiff's construction is also reasonable. The jurists in the plaintiff's cases have all thought so."); *Titan Exteriors*, 297 F. Supp. 3d 628, 634 ("It needs only find that each is reasonable, and the Court so finds that 'actual cash value' when defined as 'replacement cost value less depreciation' is subject to more than one reasonable interpretation."). This split militates a finding in favor of the policyholders.

### 3.    *South Carolina "Post-Disaster Claims Guide" Does Not Support Dismissal.*

Travelers briefly argues that a pamphlet from the South Carolina Department of Insurance website compels a ruling in its favor because it gives an example of straight line depreciation. However, this pamphlet does not address the issue of labor depreciation. More importantly, this document is not part of the insurance policy of the policyholder. As the Sixth Circuit recently held in *Hicks*, consumer literature is at most a resource, not a limitation of coverage:

> In its brief, State Farm referenced a "consumer awareness announcement" located on the Kentucky Department of Insurance website. (Appellant's Br. page 22). The document, titled "Wind and Hail Deductibles," urges Kentuckians to "carefully review" their homeowner's insurance policies to "fully understand the coverage

23

and deductibles involved before completing the purchase or renewal." … Even assuming this were an official interpretation of the ACV regulation, entitled to special agency deference, it nonetheless fails to address the issue at hand. The document says nothing about labor depreciation. As State Farm conceded during oral argument, the DOI website example is merely "guidance for consumers to consult."

*Hicks*, 751 Fed. Appx. at 708, n.3.

Even if the pamphlet did address labor depreciation, which it does not, and even if it stated labor could be depreciated, which it does not, it would only conflict with the supreme court's decision in *S.C. Elec.*, which this Court is required to follow. Further, as reflected above in the factual allegations, Travelers does not apply a straight line depreciation methodology. As a result, Travelers' citation to the pamphlet does not support dismissal.

### 4.    This Dispute Only Involves A Question Of Law Not Fact, And Is Not Subject To Appraisal.

By moving for dismissal as a matter of law, Travelers argues that the seminal issue in dispute is one of law for the Court and not an appraisal panel under the policy. Dkt. 16-1 at 7. Plaintiffs agree with Travelers on this point. However, to ensure there is no confusion, Plaintiffs wanted to briefly supplement argument on this point as the issues in this lawsuit are only subject to judicial resolution and are not subject to appraisal.

As specifically alleged in the FAC, Plaintiffs agree with Travelers' valuations of the amount of labor and materials necessary to return their properties to their pre-loss condition. FAC at ¶¶36, 48. Similarly, Plaintiffs do not dispute any of Travelers' valuations as to the depreciated values of the tangible property that was damaged. FAC at ¶¶36, 48.  Instead of a dispute over any valuations, the dispute here is only whether the policy forms allow Travelers to withhold portions of the agreed-to amounts of intangible labor as "depreciation." FAC at ¶¶37, 49. If the parties

24

submitted this dispute to appraisal, there would be nothing to appraise as there is no dispute over valuations.

In one of the decisions heavily cited by Travelers, the Minnesota Supreme Court held that whether labor can be withheld as depreciation under a property policy is a question for an appraisal panel to decide. *Wilcox v. State Farm Fire & Cas. Co.*, 874 N.W.2d 780 (Minn. 2016). Significantly, unlike South Carolina and most state laws, Minnesota case law allows appraisers to resolve questions of law. *Compare Harwell v. Home Mutual Fire Ins. Co.*, 91 S.E.2d 273, 275 (S.C. 1956) ("An agreement to submit to [appraisal] all questions of law and fact that may arise under a contract is contrary to the public policy and void, and an attempt to oust courts of their jurisdiction"), *with American Cent. Ins. Co. v. District Court*, 147 N.W. 242, 244 (Minn. 1914) ("the appraisers must determine … questions, both of law and fact, upon which the parties may differ."). For this reason, *Wilcox* is an outlier, contrary to the vast majority of decisions that hold that that whether labor can be withheld as depreciation is question of law. *See Lammert*, 572 S.W.3d at 176 ("The Minnesota Supreme Court took a third approach to answering the question by determining that the depreciation of labor costs is an issue of fact rather than law.").

This case is like that presented in *Stuart, supra,* wherein the Eighth Circuit affirmed the class certification because "[t]here is no need for a jury to evaluate conflicting estimates based on different methodologies; the parties agreed on a methodology and the only dispute is over including labor depreciation in the calculation, which is a discrete portion of the formula that is easily segregated and quantified." 910 F.3d at 376.

In short, only this Court can determine whether labor can be withheld as depreciation under the terms of the insurance policy, including whether the insurance policy is ambiguous. "It is a question of law for the court whether the language of a contract is ambiguous." *McGill v. Moore*,

672 S.E.2d 571, 574 (S.C. 2009). Similarly, [w]hen the language of a contract is clear and unambiguous, the determination of the parties' intent is a question of law for the court." *West Anderson Water Dist. v. City of Anderson*, 790 S.E.2d 204, 207 (S.C. Ct. App. 2016). In South Carolina, only the courts can resolve the question presented by Travelers' motion.

### 5. *Depreciation In Tax And Real Estate Contexts Do Not Support Travelers' Motion.*

Travelers briefly argues that labor can be withheld as depreciation in the property insurance context due to how depreciation is handled by the IRS, state taxing authorities and in eminent domain procedures. Dkt. 16-1 at 28-32. Tellingly, Travelers has not found a single case from any state or federal court suggesting that there is any relationship whatsoever between depreciation in the property insurance context versus taxation or imminent domain contexts. The case law and authority to the contrary is legion. *Dickler*, 957 F.2d at 1098-99 ("The type of depreciation considered under insurance law is that which purports to measure the deterioration of property by reason of age and physical wear and tear."); *Lammert*, 572 S.W.3d at 174 ("Insurance law is not concerned with estimated depreciation charged off on the books of business establishments, but rather with the actual deterioration of a structure by reason of age and physical wear and tear, computed at the time of loss."); *Arnold*, 268 F. Supp. 3d at 1312 n.24 ("The defendant insists that depreciation of labor costs occurs in other contexts — including tax law, maritime law and appraisals — and under various state statutes and regulations. A reasonable insured, however, is not charged with knowledge of these usages, and the defendant has failed to explain how they could negate the reasonableness of construing the Policy as not providing for depreciation of labor costs."); Robert Eurich, INSURANCE AND LOSS PREVENTION §7.4.1 (2011) ("The asset records will reflect acquisition costs less book depreciation, which should not be the basis for insurable values. Book depreciation may or may not equal physical depreciation because the rate of depreciation for

accounting purposes generally reflects tax considerations rather than actual diminution in physical value.").

### 6.    *The Duplicative Declaratory Relief Count Should Not Be Dismissed.*

Travelers' briefly argues that the FAC's declaratory relief count should be dismissed if Travelers prevails on the seminal contract dispute. Dkt. 16-1 at 32-33. Plaintiffs readily concede that if the Court determines the breach of contract count must be dismissed as a matter of law then the Court should dismiss the declaratory count as well.

However, to the extent Travelers seeks dismissal of the declaratory relief count even if Plaintiffs prevail as a matter of law, Plaintiffs oppose such a request as premature. Here, Plaintiffs will seek class certification under Fed. R. Civ. P. 23(b)(3), which permits monetary relief to all class members for, *e.g.*, breach of contract. FAC ¶¶86-99. In the event the Court ultimately determines that certification of a class under Rule 23(b)(3) for breach of contract is appropriate, Plaintiffs would agree that the declaratory relief count could then be dismissed as duplicative at that time. *See Mitchell*, 335 F. Supp. 3d at 855 ("This court has determined that the class can be certified pursuant to (b)(3) as the predominate relief sought is money damages. Declaratory relief "does not extend to cases in which the appropriate final relief relates ... predominantly to money damages." Therefore, the court finds that [the declaratory judgment count] does not survive Defendant's motion to dismiss.").

However, if this Court does not certify a Rule 23(b)(3) class, the FAC alternatively seeks certification of an "issues class" under Rule 23(c)(4). FAC ¶100. Certification of a Rule 23(c)(4) issues class could conceivably allow for some form of class-wide declaratory relief. If this Court certifies an issues class, the declaratory relief count could go forward. *See LaBrier v. State Farm Fire and Cas. Co.*, 147 F. Supp. 3d 839, 852 ("LaBrier also seeks class certification

and the Court cannot say at this stage of the litigation whether there will be class certification or if

there is, whether a declaratory judgment would serve a useful purpose. Therefore, the Court denies

State Farm's motion as to Count I, without prejudice."), *rev'd on other grounds*, 872 F.3d 567 (8th

Cir. 2017).  As a result, it is premature to dismiss the declaratory relief count if Plaintiffs prevail.

### E.    Question Certification Under South Carolina Appellate Court Rule 244.

#### 1.    *No Controlling Precedent.*

As noted above, federal courts from Arkansas, Minnesota, Nebraska, Oklahoma and

Tennessee have certified labor depreciation questions to state supreme courts. *Lammert*, 286 F.

Supp. 3d at 927.  The Fourth Circuit and its district courts regularly certify questions of law to the

South Carolina Supreme Court. *Wickersham v. Ford Motor Co.*, 738 Fed. Appx. 127, 136 (4th Cir.

2018); *Hartsock v. Goodyear Dunlop Tires North America, Ltd.*, 672 Fed. Appx. 223, 228 (4th

Cir. 2016); *Lawrence v. General Panel Corp.*, Case No. 2:17-600, 2017 WL 5484661, at *2

(D.S.C. Nov. 14, 2017).

There are two requirements prior to question certification to the South Carolina Supreme

Court: (1) the absence of controlling precedent; and (2) a question that will be determinative of the

cause. Specifically, Rule 244 of the South Carolina Appellate Court Rules permits the South

Carolina Supreme Court to "answer questions of law certified to it by any federal court of the

United States [when there are] before that court questions of law of this state which *may be*

*determinative of the cause … when it appears to the certifying court there is no controlling*

*precedent* in the decisions of the Supreme Court." *Id.* (emphasis added).

Plaintiffs believe the "no controlling precedent" standard is not met because the seminal

issue has been decided in favor of policyholders by the South Carolina Supreme Court's *S.C. Elec*.

decision, which is controlling precedent. S.C. App. R. 244. Travelers disagrees. If this Court agrees

28

with Travelers and finds that *S.C. Elec*. does not appear to be controlling precedent, Plaintiffs

would then encourage this Court to consider question certification to the state supreme court.

### 2.     *Determinative of the cause.*

There can be no serious question that the issue here is determinative of the cause because

Travelers has moved to resolve the entire case based upon the answer to the narrow legal question

presented, and Plaintiffs further concede that this case is over if Travelers prevails as a matter of

law. For these reasons, if this Court finds *S.C. Elec*. is not controlling precedent (over Plaintiffs'

objection), the Court should propound the following question to the South Carolina Supreme

Court:

> Under South Carolina law, where the parties agree that the replacement cost less
> depreciation methodology applies, may an insurer in making an actual cash value
> payment withhold a portion of repair labor as depreciation when the policy does
> not define actual cash value?

This question is derived from the question posed by the district court in *Lammert*, 286 F.Supp.3d

at 927.

### CONCLUSION

Based on the foregoing, the Court should deny Travelers' Motion to Dismiss.  In the

alternative, Plaintiffs request that the Court consider certification of a question of law to the South

Carolina Supreme Court as more fully set forth herein.

*/s/ Summer C. Tompkins*
DAVID E. MASSEY (SC Bar 3679)
SUMMER C. TOMPKINS (SC Bar 76078)
LAW OFFICES OF DAVID E. MASSEY
    TRIAL LAWYERS
1620 Gervais Street, Suite A
Post Office Box 7014
Columbia, SC 29202
(803) 256-4824
radmassey@aol.com
summertompkins2010@gmail.com

ERIK D. PETERSON*
MEHR, FAIRBANKS & PETERSON
   TRIAL LAWYERS, PLLC
201 West Short Street, Suite 800
Lexington, KY 40507
(859) 225-3731
edp@austinmehr.com

J. BRANDON McWHERTER*
GILBERT McWHERTER SCOTT
   BOBBITT PLC
341 Cool Springs Blvd., Suite 230
Franklin, TN 37067
(615) 354-1144
bmcwherter@gilbertfirm.com

T. JOSEPH SNODGRASS*
LARSON KING, LLP
30 E. 7th Street, Suite 2800
St. Paul, MN 55101
(651) 312-6510
jsnodgrass@larsonking.com

*admitted *pro hac vice*

***Attorneys for Plaintiffs and Proposed Class***
***Representatives***

1906732

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing was electronically filed with the Clerk of the Court by using the eFiling system, and the foregoing has been served on November 15, 2019, by electronically mailing a true and accurate copy to the following:

| | |
|---|---|
| William P. Davis | Wystan Michael Ackerman, Esq. |
| Baker, Ravenel & Bender, LLP | Stephen E. Goldman |
| P.O. Box 8057 (29202) | Robinson & Cole LLP |
| 3710 Landmark Drive, Suite 400 (29204) | 280 Trumbull Street |
| Columbia, SC | Hartford, CT  06103 |

*Attorneys for Defendants*

30