IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Miriam Butler and Evelyn Stewart, in her capacity as personal representative of Joseph Stewart and individually and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>The Travelers Home and Marine Insurance Company, and The Standard Fire Insurance Company,<br><br>    Defendants. | Civil Action No.: 3:19-cv-02621-JMC<br><br>**ORDER AND OPINION** |

    Currently before the court is Defendants The Travelers Home and Marine Insurance Company's ("Travelers Insurance") and The Standard Fire Insurance Company's ("Standard Fire") (collectively, "Defendants") Motion to Dismiss. (ECF No. 16.) Plaintiffs Miriam Butler and Evelyn Stewart, in her capacity as Personal Representative of the Estate of Joseph Stewart, individually and on behalf of others similarly situated (collectively, "Plaintiffs") filed opposition briefing in response to Defendants' Motion (ECF No. 22), to which Defendants filed a reply (ECF No. 26). Plaintiffs and Defendants have additionally filed a number of supplemental briefs related to purported developments in case law since the Motion's filing. (ECF Nos. 29-39.)

    In addressing the merits of the Motion, the issue for the court's consideration is whether an insurer may depreciate the costs of labor in determining the Actual Cash Value ("ACV") of a covered loss when the term ACV is undefined in the policy. This issue has not been adequately addressed by controlling precedent of South Carolina's appellate courts. As a result, the court must certify this issue to the South Carolina Supreme Court.

1

### I.     RELEVANT FACTUAL AND PROCEDURAL BACKRGOUND[1]

Plaintiffs' insurance policies "provided insurance coverage for, *inter alia*, direct physical loss to the dwelling and other structures located on the insured premises, except as specifically excluded or limited by the" policies. (ECF No. 13 ¶¶ 12, 20.) When a covered loss occurred, Defendants were required to pay for the ACV of the damage and, if and when actual repairs were completed, thereafter pay a supplemental amount to cover the full cost of the covered damage. (ECF No. 16-1 at 7.) ACV was calculated by "estimating the cost to repair or replace the damage with new materials . . . [and] then subtracting depreciation." (ECF No. 13 ¶¶ 27, 39.) Defendants' calculation of depreciation included the costs of labor and materials, and the term "ACV" was not defined in the policies. (ECF Nos. 13 ¶¶ 37, 49; 16-1 at 14.)

Ms. Butler's house was damaged by a fire in 2016. (*Id.* ¶¶ 1, 15.) She submitted a claim to her insurance company, Travelers Insurance, which estimated the damage at $111,442.76. (*Id.* ¶ 34.) After subtracting depreciation and her deductible, Travelers Insurance paid Ms. Butler $50,179.35 in ACV with the option for additional payment if the actual repairs exceeded the payout. (*Id.*) Travelers Insurance depreciated labor as well as materials when calculating the ACV. (*Id.* ¶ 37.)

The home of Ms. Stewart's father was also damaged by a fire in 2016. (*Id.* ¶¶ 23.) Ms. Stewart's father has since passed away, and she now brings this suit as the personal representative of his estate, as well as on behalf of unnamed class members (collectively, the "Class").[2] (*Id.* ¶ 2.) A claim was submitted to Standard Fire, which estimated the damage at $2,617.26. (*Id.* ¶¶ 19, 46.) After subtracting depreciation and the deductible, Standard Fire issued a payment of $599.47 in

---

[1] In light of the procedural posture of this case, the facts set forth herein are essentially the allegations in the Amended Complaint.

[2] The court has not yet addressed class certification in this matter.

ACV, with the option for additional payment if the actual repairs exceeded the payout. (*Id.* ¶ 46.) Standard Fire depreciated labor as well as materials when calculating the ACV. (*Id.* ¶ 49.) Other members of the potential Class are alleged to have had damage to a covered structure and thereafter received ACV payments, minus depreciated labor costs, from Defendants during the relevant period. (*Id.* ¶¶ 86-100.)

Plaintiffs filed the Initial Complaint on September 16, 2019 (ECF No. 1), and the Amended Complaint on November 4, 2019, alleging a Breach of Contract in Count I and seeking Declaratory Judgment and Relief in Count II (ECF No. 13). In Count I, Plaintiffs claim Defendants "breached its contractual duty to pay Plaintiffs and members of the proposed class the ACV of their claims by unlawfully withholding labor as depreciation." (*Id.* ¶ 107.) Plaintiffs do not allege they actually repaired the covered damage, and instead seek relief solely based on the calculation of the ACV payment. (ECF No. 22 at 10.) Plaintiffs explain that the insurance industry has moved towards depreciating both labor and materials instead of only materials, thereby in effect reducing ACV payouts to customers. (ECF No. 13 ¶¶ 52-67.) Rather than either (1) choosing to continue depreciating only materials or (2) depreciating both labor and materials and informing its customers of this practice, Plaintiffs posit that Defendants did neither, and instead now simply depreciate labor without notice or explanation. (*Id.* ¶¶ 37, 49, 52-67, 70-84, 107, 110.) In Count II, Plaintiffs seek "a declaration that [Defendants'] property insurance contracts prohibit the withholding of labor costs as depreciation when adjusting partial losses under the methodology employed here." (*Id.* ¶ 116.)

On November 4, 2019, Defendants filed a Motion to Dismiss, alleging that Plaintiffs failed to state a claim for relief. (ECF No. 16.) On November 15, 2019, Plaintiffs filed a response in opposition (ECF No. 22), and Defendants filed a reply (ECF No. 26). Subsequently, and without

leave of the court, Plaintiffs and Defendants filed no less than ten supplemental briefs concerning arguments over purported developments in relevant persuasive case law. (ECF Nos. 29-39.)

## II. LEGAL STANDARD

Federal courts in diversity cases apply the law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In situations in which "there is no case law from the forum state which is directly on point, the district court attempts to do as the state court would do if confronted with the same fact pattern." *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994) (internal citations omitted). The United States Court of Appeals for the Fourth Circuit has noted that "[o]nly if the available state law is clearly insufficient should the court certify the issue to the state court." *Id.* (citing *Smith v. FCX, Inc.*, 744 F.2d 1378, 1379 (4th Cir. 1984)).

South Carolina Appellate Court Rule 244 provides that the Supreme Court of South Carolina

> in its discretion may answer questions of law certified to it by any federal court of the United States . . . when requested by the certifying court if there are involved in any proceeding before that court questions of law of this state which may be determinative of the cause then pending in the certifying court when it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court.

Rule 244(a), SCACR. The certification order must set forth: (1) "the questions of law to be answered"; (2) "all findings of fact relevant to the questions certified"; and (3) "a statement showing fully the nature of the controversy in which the questions arose." Rule 244(b), SCACR.

## III. ANALYSIS

### A. Parties' Arguments[3]

It is undisputed that Plaintiffs were entitled to the ACV of the damage to their property. (ECF Nos. 13 ¶ 106; 22 at 10.) Plaintiffs further do not dispute Defendants' valuations of the

---

[3] While the parties offer numerous arguments, those below are most relevant to the issue of certification.

covered damage. (ECF No. 22 at 10.) As Plaintiffs succinctly put it, "[i]nstead of disputing valuations, the dispute here is simply whether [Defendants'] policy forms allow Defendants to withhold portions of the agreed-to amounts of labor as 'depreciation.'" (*Id.*)

What comprises ACV? Defendants believe "[a]n ordinary person would understand the words 'actual cash value' to mean the actual value, in cash, of the damaged property, or in other words, its actual economic value." (ECF No. 16-1 at 16-17.) Noting this definition as the majority rule, Defendants cite to several out-of-state and out-of-circuit appellate decisions supporting it, including the Eighth and Tenth Circuits of the United States Court of Appeals, and the Supreme Courts of Nebraska, Oklahoma, and Minnesota.[4] (*Id.* at 16, 23-27.) Defendants also point out the South Carolina Department of Insurance published a "Post-Disaster Claims Guide," which in part allegedly includes an explanation of ACV that supports Defendants' definition of ACV in the instant case. (ECF No. 16-3 at 11.) Defendants further raise historical precedent elsewhere in the nation dating back to the 19th century to support depreciating the entire damaged property, as opposed to simply depreciating materials. (ECF No. 16-1 at 21-23.) Lastly, based on these arguments and the sole South Carolina Supreme Court opinion discussed below,[5] Defendants portend that South Carolina is likely to follow their definition of ACV. (*Id.* at 28.)

---

[4] *See, e.g., Henn v. American Family Mutual Ins. Co.*, 894 N.W.2d 179, 185 (Neb. 2017) ("[A]ctual cash value must . . . be measured as an economic unit, i.e., related to what, in terms of value, one could receive for his or her property.") (quoting *Erin Rancho Motels, Inc. v. United States Fid. & Guar. Co.*, 352 N.W.2d 561, 565 (Neb. 1984); *see also Lampe Mkt. Co. v. Alliance Ins. Co.*, 22 N.W.2d 427, 428-29 (S.D. 1946) (ACV means "'actual value' expressed in terms of money"); *Tyler v. Shelter Mut. Ins. Co.*, 184 P.3d 496, 501 (Okla. 2008) (actual cash value means "the actual value of property expressed in terms of money"); *McAnarney v. Newark Fire Ins. Co.*, 159 N.E. 902 (N.Y. 1928) ("We interpret 'actual cash value' to have no other significance than 'actual value' expressed in terms of money.").
[5] *S.C. Elec. & Gas Co. v. Aetna Ins. Co.*, 238 S.C. 248, 251-52 (1961).

On the other hand, Plaintiffs cite to a number of appellate decisions supporting their interpretation of ACV, including the Sixth Circuit and Supreme Courts of Arkansas, Mississippi, and Tennessee.[6] (ECF No. 22 at 26-27.) Plaintiffs note these states generally calculate ACV using the "replacement cost less depreciation" methodology—which they point out is the methodology used in their policies—instead of the states that generally calculate ACV under the "broad evidence rule" cited by Defendants.[7] (*Id.* at 26.) Plaintiffs further urge the court to follow the position of National Underwriters, "the insurance industry's leading authority on coverage issues, . . . that property insurers should not withhold labor as depreciation from actual cash value payments unless the insurer's policy expressly allowed for the practice." (*Id.* at 8-9.) Lastly, Plaintiffs dispute the remainder of Defendants' contentions and further argue that *S.C. Elec. & Gas Co.* in fact supports their interpretation of ACV. (*Id.* at 9-10, 30-35.)

In terms of controlling precedence, both parties agree that only one opinion by the South Carolina Supreme Court is particularly relevant to the instant issue. *S.C. Elec. & Gas Co.*, 238 S.C. 251-52. However, the parties contest its significance.

In 1961, the South Carolina Supreme Court in part examined whether a jury's monetary award for a damaged electricity generator and its components was excessive. *Id.* at 252. In two paragraphs out of an eleven-page opinion, the Supreme Court walked through an example

---

[6] *See Hicks v. State Farm Fire & Cas. Co.*, 751 Fed. App'x. 703 (6th Cir. 2018); *Lammert v. Auto-Owners (Mutual) Ins. Co.*, 572 S.W.3d 170 (Tenn. 2019) ("We conclude that the answer to the district court's certified question is no, the insurance company cannot withhold a portion of the labor costs as depreciation under either policy."); *Adams v. Cameron Mut. Ins. Co.*, 430 S.W.3d 675, 678 (Ark. 2013) ("We . . . simply cannot say that labor falls within that which can be depreciable."); *Bellefonte Ins. Co. v. Griffen*, 358 So.2d 387, 389-90 (Miss. 1978) (policy term allowing "deduction for depreciation" is ambiguous because it "does not specifically prohibit or allow depreciation on the cost of labor").

[7] *Hicks*, 751 Fed. App'x. at 710-11 (finding labor was not depreciable for an ACV under Kentucky law, and distinguishing states that applied the "broad evidence rule" or involved an "expressly define[d] ACV").

calculation of ACV—and in the process mentioned labor was not depreciable—in order to conclude the jury's $87,000 award was not excessive. *Id.* at 262-63.

> In the case at bar the [generator's] coils were at the time of the fire twenty years old; there was evidence warranting inference that they would have had thirty years more of useful life; they could not be replaced with coils of their own age; new coils were necessary. There was testimony to the effect that the actual cost of the new coils, in place, was $132,181, of which $90,300, representing the cost of materials, would be depreciable, **and the balance, $41,881, representing cost of winding and installation, would not be depreciable.** The cost of the new materials, depreciated to sixty (60%) per cent to conform with the depreciated life of the old as above mentioned, would be $54,180. **Addition to this figure of the undepreciable $41,881 of replacement cost**, would indicate that the actual cost of the new coils, in place, after depreciation, was $96,061, a figure substantially higher than the jury's verdict.
>
> . . .
>
> Based on a forty per cent depreciation, the actual cost of the new coils in place, as before mentioned, was $96,061. Calculating depreciation at fifty per cent (as suggested by the testimony of Mr. Kindelberger, the field service engineer of Westinghouse), the actual cost of the new coils in place was $87,031. The verdict, $87,000, is in our opinion not vulnerable to the charge of excessiveness requiring a new trial absolute.

*Id.* (emphasis added).

Plaintiffs proclaim that *S.C. Elec. & Gas Co.* is dispositive of the Motion to Dismiss, as such language clearly shows labor should not be depreciated when calculating an ACV payout. (ECF No. 22 at 21-23.) Plaintiffs further observe "the unanimous [South Carolina Supreme Court] decision in *S.C. Elec.* [*& Gas Co.*] has received no negative treatment from any court, but has been favorably cited." (*Id.* at 24.)

Even so, Defendants stress that in the nearly sixty years since the Supreme Court's decision, no South Carolina court has cited *S.C. Elec. & Gas Co.* for the proposition now asserted by Plaintiffs. (ECF No. 26 at 11.) Moreover, Defendants point out the property at issue involved a generator. (ECF No. 16-1 at 29.) "Whether such equipment is real property or personal property

7

may depend on the nature of the installation, and can be debatable in some cases as a matter of property law." *Id.* Defendants further explain that at the time of the decision, South Carolina courts could reverse verdicts "for excessiveness only when the verdict [wa]s so out of proportion to the evidence that it clearly indicate[d] that it was influenced by partiality, prejudice, passion, caprice, or other considerations not founded upon the evidence." (ECF No. 26 at 9 (citation omitted).) Defendants maintain the Supreme Court was simply justifying the jury award as not overly excessive by choosing one method the jury could have used to calculate its award, rather than creating legal precedent in a short hypothetical example that ACV must be calculated in South Carolina without depreciating labor. (*Id.* at 9-10.)

### B. Court's Review

Here, the court first finds the question of law at issue will be determinative of the suit pending before it. As Plaintiff explains, "[t]here can be no serious question that the issue here is determinative of the cause because [Defendants] ha[ve] moved to resolve the entire case based upon the answer to the narrow legal question presented, and Plaintiffs further concede that this case is over if [Defendants] prevail[] as a matter of law." (ECF Nos. 22 at 36.) Defendants likewise state in their Motion that "the parties' dispute focuses on the meaning of the term 'actual cash value,' which is not defined by the [p]olicies." (ECF No. 16-1 at 14.) Indeed, the parties' briefing is wholly concerned with whether an ACV payout in South Carolina, when undefined, allows for the depreciation of labor. Thus, the court finds the question of law at issue is determinative of the outcome of the instant suit.

Second, after reviewing the authorities cited by the parties, the court is persuaded that certification is appropriate in this case due to a lack of controlling precedent by the South Carolina Supreme Court. The sole opinion relevant to the instant legal issue, *S.C. Elec. & Gas Co.*, appears

to stand for less than the proposition advocated by Plaintiffs. If the Supreme Court adopted as a matter of law that labor was not depreciable for ACV payouts, it did so in a thoroughly unassuming way. Instead, it appears the Supreme Court simply examined a hypothetical ACV calculation and mentioned that labor was not depreciated. *S.C. Elec. & Gas Co.*, 238 S.C. 262-63. Indeed, other than the references above, it does not appear labor depreciation was at issue or otherwise discussed in the case. *See id.* at 252-55.

Furthermore, as noted by Defendants, only three cases have cited to *S.C. Elec. & Gas Co.* in its nearly sixty-year history. None of these citations stand for Plaintiffs' advocated proposition, while two of the citations were from out of state courts, and the remaining citation came from the South Carolina Supreme Court in 1969. *See Smith v. Winningham*, 252 S.C. 462, 470 (1969) (citing to *S.C. Elec. & Gas Co.* for the proposition "that the portions of a charge complained of as being erroneous must be considered in context with the rest of the charge on the same question. In other words, a charge must be considered as a whole"); *Aetna Ins. Co. v. Getchell Steel Treating Co.*, 395 F.2d 12, 17 (8th Cir. 1968) ("To the extent that the jury charge as quoted in [*S.C. Elec. & Gas Co.*] might be read to contain any language to the contrary, we decline to engraft it on Minnesota law."); *Tyler*, 184 P.3d at 501 (observing *S.C. Elec. & Gas Co.* and other cases found the terms "fair value" and "actual value" were not equivalent).

Additionally, and as comprehensively debated by the parties, the question of whether labor costs may be depreciated has led to a variety of different answers among federal and state appellate courts. Due to this uncertainty, several state supreme courts have answered certified questions by federal courts related to the instant question of law. *See, e.g., Henn*, 894 N.W.2d at 181; *Wilcox v. State Farm Fire & Cas. Co.*, 874 N.W.2d 780, 782 (Minn. 2016); *Adams*, 430 S.W.3d at 676.

Accordingly, based on the insufficiency of state law and split in persuasive authorities, the court finds certification proper in this case in order to reach a decision.

### C. Certified Questions

The court certifies the following question of law.

> When a homeowner's insurance policy does not define the term "actual cash value," may an insurer depreciate the cost of labor in determining the "actual cash value" of a covered loss when the estimated cost to repair or replace the damaged property includes both materials and embedded labor components?[8]

### D. Motion to Dismiss

Lastly, the court finds that the Supreme Court's pending ruling on the certified question above is outcome determinative to the issues in Defendants' Motion. The court therefore denies without prejudice Defendants' Motion to Dismiss (ECF No. 16), with leave to refile the arguments on any undecided issues once the Supreme Court has conferred its ruling.

---

[8] This question was offered by Defendants and addressed in *Wilcox*, 874 N.W.2d at 782. (ECF No. 26 at 15.) The court declines to certify the phrasing of Plaintiffs' proposed question, which asked:

> [u]nder South Carolina law, where the parties agree that the replacement cost less depreciation methodology applies, may an insurer in making an actual cash value payment withhold a portion of repair labor as depreciation when the policy does not define actual cash value?

(ECF No. 22 at 36 (noting the question was "derived from" *Lammert*, 286 F. Supp. 3d at 927).)

## IV.    CONCLUSION

Based on the foregoing, the court **CERTIFIES** the above question to the South Carolina Supreme Court. The clerk shall forward a copy of this Order to the South Carolina Supreme Court under this court's official seal. In the interest of judicial economy and its docket considerations, the court **DENIES** without prejudice Defendants' Motion to Dismiss, (ECF No. 16), with leave to refile after adjudication of the certified question.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

September 26, 2020
Columbia, South Carolina